# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHOLIC ANSWERS, INC.; KARL KEATING<br><br>                    Plaintiffs,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | CASE NO. 09-CV-670-IEG (AJB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(Doc. No. 11)** |

Presently before the Court is defendant United States of America's ("Defendant") motion to dismiss Plaintiffs' first amended complaint ("FAC"). (Doc. No. 11.) Plaintiffs have filed an opposition and Defendant has filed a reply. The Court heard oral argument on the motion on Monday, September 28, 2009. For the reasons stated herein, the motion is granted.

## BACKGROUND

I.  Underlying Facts

The following facts are drawn from Plaintiffs' FAC unless otherwise noted. Plaintiff Catholic Answers, Inc. ("CA") is a nonprofit religious corporation. Plaintiff Karl Keating ("Keating") is the founder and president of CA. CA was allegedly incorporated in the State of California under the California Nonprofit Religious Corporation Law (Cal. Corp. Code § 9110

1  (2009)), and is exempt from federal income taxes pursuant to 26 U.S.C. §§ 501(a) and 501(c)(3).[1]

2  On April 13, 2004, CA posted an "E-Letter" from Mr. Keating on its website.  The E-
3  Letter opines that, *inter alia,* Senator John Kerry, then the presumptive Democratic party
4  presidential nominee:

> is nominally Catholic, and is vociferously pro-abortion.  So far as I can tell, he
> flunks the test given in Catholic Answers' "Voter's Guide for Serious Catholics":[2]
> He is wrong on all five "non-negotiable" issues listed there.
>
> He is precisely the kind of politician who should be denied Communion at Catholic
> parishes because his strong endorsement of abortion qualifies him as a "notorious
> sinner."

9  (FAC ¶ 23) (citation omitted).  On May 11, 2004, Mr. Keating posted another E-Letter to the CA
10 website responding to readers' comments on Mr. Keating's previously-expressed opinions on
11 Senator Kerry and abortion-related issues.
12 By a letter dated January 3, 2005, the United States Internal Revenue Service ("IRS")
13 notified CA that it was investigating the organization's activities, specifically, whether CA had
14 engaged in any prohibited acts of political intervention.  On May 6, 2008 the IRS allegedly
15 notified CA that Mr. Keating's E-Letters constituted "political expenditures" within the meaning

---

[1] "Exemption from taxation. An organization described in subsection (c) or (d) . . . shall be exempt from taxation under this subtitle [26 U.S.C.§§ 1 et seq.] unless such exemption is denied under section 502 or 503 [26 U.S.C. § 502 or 503]." 26 U.S.C. § 501(a)(2009). Section 501(c)(3) includes "Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3) (2009).

[2] According to the IRS's investigation-related correspondence, CA created, published, and distributed a guide entitled the "Voters Guide for Serious Catholics" ("VGSC"). [Ex. 2 to Hendon Decl. ISO Motion ("Hendon Decl."), Doc. No. 11-7; Ex. 8 Bieniek Decl. ISO Opp. ("Bieniek Decl."), Doc. No. 14-11.] The VGSC assert[ed] that it [was] intended to help the reader vote for candidates for public office in a manner consistent with Catholic moral teachings. The VGSC identifies five issues it deems to be "non-negotiable" issues and instructs the reader on how to narrow down the list of candidates to those who are acceptable based on the non-negotiable issues." (Id.)

of 26 U.S.C. § 4955(d)[3] because they "oppose the election of a specific candidate running in the November 2004 presidential election." Accordingly, the IRS assessed excise taxes for the tax years of 2004 and 2005, pursuant to 26 U.S.C. § 4955(a).[4] The IRS determined the total amount of the expenditures to be $831.41. Accordingly, the IRS assessed excise taxes pursuant to § 4955(a) in the following amounts, including interest: $58.51 for the 2004 tax year, and $43.42 for the 2005 tax year.

Moreover, the IRS required CA to attempt to "correct" the political expenditure pursuant to 26 U.S.C. § 4955(f)(3).[5] On March 17, 2008 CA collected the correction amounts, totaling $831.41, from Mr. Keating. On March 19, 2008, CA submitted a document entitled "Form 870-E, Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment," with respect to the excise taxes along with proof the expenditures had been corrected. On September 24, 2008 CA filed Form 843, Claim for Refund and Request for Abatement with the IRS, requesting a refund of the excise taxes paid for both 2004 and 2005. (Ex. 1 to FAC, pp. 5 and 7.)

In a letter dated March 27, 2009, the IRS indicated it was abating the excise taxes pursuant

---

[3] Section 4955 provides for "Taxes on political expenditures of section 501(c)(3) organizations." Section 4955(d) provides, inter alia, "Political expenditure. For purposes of this section–(1) In general. The term "political expenditure" means any amount paid or incurred by a section 501(c)(3) organization in any participation in, or intervention in (including the publication or distribution of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 4955(d)(1)(2009).

[4] "Initial taxes. (1) On the organization. There is hereby imposed on each political expenditure by a section 501(c)(3) organization a tax equal to 10 percent of the amount thereof. The tax imposed by this paragraph shall be paid by the organization. (2) On the management. There is hereby imposed on the agreement of any organization manager to the making of any expenditure, knowing that it is a political expenditure, a tax equal to 2 1/2 percent of the amount thereof, unless such agreement is not willful and is due to reasonable cause. The tax imposed by this paragraph shall be paid by any organization manager who agreed to the making of the expenditure." 26 U.S.C. § 4955(a)(2009).

[5] "Correction. The terms "correction" and "correct" mean, with respect to any political expenditure, recovering part or all of the expenditure to the extent recovery is possible, establishment of safeguards to prevent future political expenditures, and where full recovery is not possible, such additional corrective action as is prescribed by the Secretary by regulations." 26 U.S.C. § 4955(f)(3)(2009).

to 26 U.S.C. § 4962,[6] and issuing a refund of the amounts assessed, including interest. Specifically, the letter stated:

> We are pleased to tell you that we have approved your claim for the tax years(s) shown above. We have determined that the political intervention subject to tax under section 4955 of the Internal Revenue Code was not wilful and flagrant and was corrected within the correction period. Accordingly, under section 4962, we have abated the tax. We will change your account accordingly.
>
> If you do not owe other amounts that the law requires us to collect, we will issue you a refund including interest.

(Ex. 2 to FAC.) Accordingly, on April 21, 2009, CA received refund checks from the IRS in the amounts of $58.41 and $43.42 for the tax years 2004 and 2005, respectively. (FAC ¶ 45-46; Ex. 2 to FAC; Exs. 4 and 5 to Hendon Decl.)

II.     Plaintiffs' Complaint

Plaintiffs filed the instant action on April 3, 2009, and filed their FAC on July 15, 2009. (Doc. No. 10.) Plaintiffs allege that because CA did not make political expenditures within the meaning of § 4955(d), the IRS wrongly collected the excise taxes, and CA should not have been required to "correct" the expenditures. Although CA received an abatement and refund of the excise taxes, Plaintiffs disagree with the *basis* for those actions because the IRS never conceded the E-Letters were not political expenditures. Plaintiffs therefore argue CA is now prohibited from returning the $831.41 to Mr. Keating. Plaintiffs further allege the IRS's position regarding the nature of the E-Letters chills them from engaging in speech that is otherwise permissible by a § 501(c)(3) organization.

Plaintiffs additionally raise constitutional objections to § 4955, Treasury Regulation § 53.4955-1,[7] and Treasury Regulation § 1.501(c)(3)-1(c)(3)(iii), arguing:

---

[6] (a) General rule. If it is established to the satisfaction of the Secretary that– (1) a taxable event was [not willful and flagrant], and (2) such event was corrected within the correction period for such event, then any qualified first tier tax imposed with respect to such event (including interest) shall not be assessed and, if assessed, the assessment shall be abated and, if collected, shall be credited or refunded as an overpayment." 26 U.S.C. § 4962 (2009).

[7] Treasury Regulation § 53.4955-1 gives further detail on the assessment of excise taxes pursuant to § 4955. As the section is lengthy and does not lend to the Court's ultimate decision of this motion, the Court has not reproduced it here.

    (1) all three are unconstitutional, facially and as applied, because they are vague and lacking in terminology susceptible to objective assessment;

    (2) § 4955 and Treasury Regulation § 53.4955-1 are unconstitutional, facially and as applied, because they lack constitutionally-requisite specificity and reach expressive activities and speech that are not IRS-regulable political expenditures; and

    (3) Treasury Regulation § 1.501(c)(3)-1(c)(3)(iii)'s particular language[8] is unconstitutionally overbroad because it encompasses speech that is not limited to activities and communications such as express advocacy for or against a candidate's election, or direct or in-kind contributions to political candidates.

(FAC ¶¶ 52-70.)

Plaintiffs' jurisdictional allegations state "this is an action for the recovery of internal revenue taxes, and this Court has jurisdiction by reason of 28 U.S.C. § 1346(a)(1)[9] and 26 U.S.C. § 7422.[10] Notwithstanding Plaintiffs' allegation that this case is a claim for a tax refund, the FAC also sets forth two "counts" alleging numerous claims for declaratory relief with respect to the excise taxes CA paid for tax years 2004 and 2005. Specifically, for each tax year, Plaintiffs request: (1) judgment that the E-Letters are not "political expenditures" within the meaning of § 4955(d); (2) judgment that CA is entitled to return any monies collected from Mr. Keating for the cost of the E-Letters; and (3) a declaration that § 4955, Treasury Regulation § 53.4955-1, and Treasury Regulation § 1.501(c)(3)-1(c)(3)(iii) apply only to "activities that constitute express

---

[8] The portions of the regulation Plaintiffs challenge provide as follows: "An organization is an action organization if it participates or intervenes, directly or indirectly, in any political campaign on behalf of or in opposition to any candidate for public office[;]" and "[a]ctivities which constitute participation or intervention in a political campaign on behalf of or in opposition to a candidate include, but are not limited to, the publication or distribution of written or printed statements or the making of oral statements on behalf of or in opposition to such a candidate." 26 C.F.R. § 1.501(c)(3)-1(c)(3)(iii) (2009).

[9] "The district courts shall have original jurisdiction, concurrent with the United States Claims Court [United States Court of Federal Claims], of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]" 28 U.S.C. § 1346(a)(1) (2009).

[10] Section 7422 provides a civil cause of action for a taxpayer to sue the United States government to recover the payment of taxes wrongfully assessed.

advocacy."[11]

## DISCUSSION

The United States seeks to dismiss all claims asserted in the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) because: (1) Mr. Keating has no standing to bring a taxpayer refund case; (2) the "doctrine of variance" divests the Court of subject matter jurisdiction over the majority of Plaintiffs' requested relief; and (3) the issues Plaintiffs raise in the FAC are moot because the United States refunded the excise taxes prior to the commencement of the action.

I.   Legal Standards

   A.   Federal Rule of Civil Procedure 12(b)(1)

The party asserting a federal court's jurisdiction bears the burden of establishing that jurisdiction exists. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." Thornhill Publishing Co. v. General Tel & Elect., 594 F.2d 730, 733 (9th Cir. 1979); see also Fed. R. Civ. P. 12(b)(1) (2009). In a facial attack of the complaint's allegations, a reviewing court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). However, a "speaking motion" "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (emphasis added). Moreover, in factual challenges to subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill, 594 F.2d at 733 (citation omitted). Nevertheless, where the jurisdictional and substantive issues "are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination

---

[11] Interestingly, Plaintiffs stated at oral argument they *do not* seek a declaration that the aforementioned statute and regulations are unconstitutional, but *do* seek a narrowing construction of the meaning of "political intervention" that is consistent with the United States Constitution.

1  should await a determination of the relevant facts on either a motion going to the merits or at
2  trial." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).
3      B.    Federal Rule of Civil Procedure 12(b)(6)[12]
4      A complaint must contain "a short and plain statement of the claim showing that the
5  pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule
6  12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in
7  the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). A
8  complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it contains "enough facts
9  to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544,
10 570 (2007). The court only reviews the contents of the complaint, accepting all factual allegations
11 as true, and drawing all reasonable inferences in favor of the nonmoving party. Knievel v. ESPN,
12 393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the court need not accept
13 "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).
14 Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has
15 not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S.
16 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that,
17 because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129
18 S. Ct. at 1950. The Court may deny leave to amend the complaint where a complaint previously
19 has been amended, or where amendment would be futile. Allen v. City of Beverly Hills, 911 F.2d
20 367, 373 (9th Cir. 1990).
21      C.    Civil Actions for Tax Refunds Under 26 U.S.C. § 7422
22      The United States is a sovereign entity and may not be sued without its consent. Elias v.
23 Connett, 908 F.2d 521, 527 (9th Cir. 1990). 28 U.S.C. §1346(a)(1) specifically grants jurisdiction
24 to federal district courts over actions for the refund of any internal revenue tax allegedly
25 erroneously or illegally assessed or collected. Internal Revenue Code section 7422 grants a waiver
26 of sovereign immunity to permit jurisdiction under 28 U.S.C. § 1346(a)(1). See 26 U.S.C. §
27
28      [12] Although the United States does not move to dismiss the FAC pursuant to Rule 12(b)(6), a 12(b)(6) analysis is applicable to its standing argument, as the Court further discusses *infra*.

1    7422(a) (2009). The taxpayer, however, must first pay the assessment in full and file an

2    administrative claim for a refund which the IRS has rejected or not acted upon in six months.

3    Thomas v. United States, 755 F.2d 728, 729 (9th Cir. 1985).

4    Importantly, although Plaintiffs seek substantial declaratory relief, they may not do so

5    absent a viable tax refund claim.  The Declaratory Judgment Act provides district courts with

6    jurisdiction over cases seeking declaratory relief, but it specifically prohibits federal courts from

7    entertaining declaratory relief proceedings "with respect to Federal taxes."  See 28 U.S.C. § 2201;

8    California by Deukmejian v. Regan, 641 F.2d 721, 722 (9th Cir. Cal. 1981) ("The purpose of the

9    federal tax exception to the Declaratory Judgment Act is to protect the government's ability to

10   assess and collect taxes free from pre-enforcement judicial interference, and to require that

11   disputes be resolved in a suit for refund.")

12   II.    Plaintiff Keating's Standing

13   The United States  argues Mr. Keating lacks standing to bring a refund suit because he was

14   not assessed the excise taxes at issue.  Moreover, he did not pay the excise taxes or file an

15   administrative claim for refund with the IRS, two mandatory prerequisites for filing a refund claim

16   in federal court.  Thomas, 755 F.2d at 729. Although the United States has raised its standing

17   argument on a motion to dismiss for lack of subject matter jurisdiction, and Plaintiffs have not

18   opposed the propriety of this theory, the Court notes "a dismissal for lack of statutory standing is

19   properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject

20   matter jurisdiction."  Vaughn v. Bay Envtl. Mgmt., 567 F.3d 1021, 1024 (9th Cir. 2009); see also

21   Bollard v. California Province of the Soc'y of Jesus, 196 F.3d 940, 950-51 (9th Cir. 1999)

22   (clarifying that if a plaintiff is barred from pursuing a proper cause of action under Title VII, a trial

23   court should dismiss the action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and

24   not for lack of subject matter jurisdiction.)   Accordingly, the Court reviews Defendant's argument

25   through the lens of a 12(b)(6) motion, accepting all facts alleged in the FAC as true.

26   Plaintiffs argue Mr. Keating has standing to sue under 26 U.S.C. § 7422(g)(3), which

27   provides:

28   > Final determination of issues. For purposes of this section, any suit for the credit or
   > refund of any tax imposed under section [4955] with respect to any act (or failure to
   > act) giving rise to liability for tax under such section[], shall constitute a suit to

determine all questions with respect to any other tax imposed with respect to such act (or failure to act) under such sections, and failure by the parties to such suit to bring any such question before the Court shall constitute a bar to such question.

Plaintiffs contend Mr. Keating's argument that CA should be allowed to return the $831.41 to him is included within the scope of § 7422(g)(3). Even if this were true, Plaintiffs provide no support for the argument that § 7422(g)(3) allows parties to end-run the jurisdictional requirements of § 7422: full payment of the tax, and filing of an administrative claim. Moreover, Plaintiffs' have provided no support for their contention that the "correction" amount CA recovered from Keating is the type of "other tax" contemplated by § 7422(g)(3). Plaintiffs' reliance on that section is therefore unavailing.

CA also argues it is "required to" join Mr. Keating as a plaintiff pursuant to Fed. R. Civ. P. 19(a)(1)(B)(i) and (ii), which provide "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." However, despite Mr. Keating's interest in recovering the $831.41 and CA's risk that Mr. Keating might "attempt to recover the amount of the expenditures," Plaintiffs' refund claim is premised on the assessment of the excise taxes, which Mr. Keating did not pay. As Mr. Keating has not fulfilled the jurisdictional prerequisites for bringing a refund suit in federal court, joining him would "deprive the court of subject matter jurisdiction." Therefore, Plaintiffs' reliance on Rule 19 is also unavailing. The Court accordingly dismisses Mr. Keating as a party to this action with prejudice, as amendment to the complaint would be futile.

III.   The Doctrine of Variance Bars Many of CA's Theories of Recovery

The claim CA submitted to the IRS simply stated:

> CA disagrees with the Service's determination that these E-letters constitute "political expenditures" within the meaning of Section 4955(d). Specifically, CA does not believe that the statements contained in the E-letters constitute "participation in, or intervention in, any political campaign on behalf of (or in opposition to) any candidate for public office." Accordingly, CA is entitled to a refund of taxes paid pursuant to Section 4955 because it did not make a "political expenditure."

(Ex. 1 to FAC.)  The United States accordingly argues the "doctrine of variance" bars the following relief  because CA did not include these theories in its claim to the IRS:

1. CA's constitutional objections to § 4955, Treasury   Regulation§ 53.4955-1, and Treasury Regulation § 1.501(c)(3)-1(c)(3)(iii)

2. CA's request for a declaration that § 4955, Treasury Regulation § 53.4955-1, and Treasury Regulation § 1.501(c)(3)-1(c)(3)(iii) apply only to activities that constitute express advocacy; and

3. CA's request for a judgment that it is entitled to return any monies collected from Keating for the cost of the E-Letters

 As a elementary matter, "[n]o suit can be maintained against the sovereign [for illegally collected taxes] unless it is strictly within the terms of the statute under which the sovereign has consented to be sued." Bear Valley Mut. Water Co. v. Riddell, 493 F.2d 948, 950 (9th Cir. 1974). 26 U.S.C. § 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Accordingly, the regulations promulgated under 26 U.S.C. § 7422 require the taxpayer to specify *each ground* for which a refund is claimed:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail *each ground* upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the *exact basis* thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

26 C.F.R. § 301.6402-2(b)(1) (2009).  "These requirements ensure that the IRS is given adequate notice of each claim and its underlying facts, so that the IRS may conduct an administrative investigation and determination.  They also allow the IRS to correct any errors that may have been made and limit the scope of refund litigation to issues the IRS has examined and is willing to defend." Quarty v. United States, 170 F.3d 961, 972 (9th Cir. 1999).  Filing a claim for refund in compliance with 26 U.S.C. § 7422(a) and Treasury Regulation § 301.6402-2(b)(1) is a jurisdictional prerequisite to a suit for a refund. Bear Valley, 493 F.2d at 951.  "If the grounds

1  raised in a refund suit are at "variance" with those presented to the IRS in a claim for refund, the
2  added grounds must be disregarded." Randle v. United States (IRS), 2000 U.S. Dist. LEXIS
3  13591, at * 18 (C.D. Cal. 2000) (citing Bear Valley, 493 F.2d at 951-52).

4　　　　In Quarty, the plaintiffs filed individual claims for refunds with the IRS, asserting several
5  grounds for their arguments that certain retroactive tax rate increases were unconstitutional.  After
6  the IRS denied their claims, the plaintiffs filed refund suits in federal district court, re-asserting the
7  constitutional objections set forth in their refund claims, and adding a claim that the tax increase
8  violated the *ex post facto* prohibition in Article I, § 9, cl. 3.  On appeal of the dismissal of all the
9  plaintiffs' claims, the Ninth Circuit held the district court lacked subject matter jurisdiction to
10 entertain the *ex post facto* claim on the merits because it was not included in the administrative
11 claim the plaintiffs submitted to the IRS, and the government did not waive compliance with the
12 specificity requirements of § 301.6402-2(b)(1).  Quarty, 170 F.3d at 973.

13　　　　Here, CA's refund claim similarly did not set out or otherwise apprise the IRS of the basis
14 for its constitutional objections, its claim for a declaration that the statute and regulations apply
15 only to "express advocacy," and its desire for a judgment that it is entitled to repay any monies
16 collected from Mr. Keating.  Accordingly, the Court dismisses these claims for lack of subject
17 matter jurisdiction. The only claim the Court may  properly review is CA's request for judgment
18 that the E-Letters are not "political expenditures" within the meaning of § 4955(d).

19 IV.     Mootness of Refund Claim

20　　　　Under  26 U.S.C. § 6532, no tax refund suit may be instituted until either rejection of the
21 administrative claim by the IRS or the expiration of the six month period for IRS consideration of
22 the claim after filing of the suit, whichever occurs earlier. 26 U.S.C. § 6532(a)(1) (2009).   On
23 September 24, 2008 CA filed a Claim for Refund and Request for Abatement, requesting a refund
24 of the excise taxes paid for both 2004 and 2005.  Here, there was no "rejection" of a claim
25 triggering CA's right to sue, because the IRS sent CA a letter stating they had abated the tax and
26 would be issuing a refund. However, the IRS did not provide this response until March 27, 2009,
27 more than six months after CA's claim, triggering its right to sue under § 6532.  CA subsequently
28 brought suit on April 3, 2009. The United States nevertheless argues CA's refund claim is moot
　　because after CA submitted its claim, the IRS abated the excise taxes and refunded the full

amount.

### A. The Abatement and Refund Render CA's Claim Moot Absent Issues Capable of Repetition Yet Evading Review

"A case becomes moot whenever it 'loses its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" West v. Secretary of the DOT, 206 F.3d 920, 924 (9th Cir. 2000) (citation omitted).  Ninth Circuit law supports the proposition that payment of a refund will moot a federal tax refund claim, unless there are issues present that are capable of repetition yet evading review.  See Church of Scientology v. United States, 485 F.2d 313, 316 (9th Cir. 1973) (holding refund suit was not mooted by the IRS's tender of the taxes paid because the controversy over the plaintiff's exempt status was likely to recur);  Mitchell v. Riddell, 402 F.2d 842 (9th Cir. 1968) (holding the IRS's return of the plaintiff's token tax payment rendered the plaintiffs' refund request moot, and that the court had no jurisdiction to declare the subject trust tax-exempt because of the Declaratory Judgment Act's prohibition of declaratory relief proceedings "with respect to Federal taxes.")[13]

CA argues the claim is not moot because the IRS did not grant its refund request "in full." Specifically, CA contends the administrative claim requested a *refund* from the IRS because the E-Letters did not constitute "political expenditures," but the IRS instead granted them an *abatement* because the "political intervention" was not "willful and flagrant" and because the act was timely corrected.  CA then cites Beall v. United States, 336 F.3d 419, 423 (5th Cir. 2003), overruled on other grounds by Hinck v. United States, 550 U.S. 501, 510 (2007),  for the

---

[13] The United States also argues that because it abated the excise taxes and issued a refund "it is irrelevant whether the IRS still believes that the E-letters are political expenditures." (Motion at 10.) In support, the United States cites Handeland v. Commissioner of Internal Revenue, 519 F. 2d 327 (9th Cir. 1975).  In Handeland, the plaintiffs sought redetermination of FICA tax liability based on their allegedly tax-exempt status.  The Ninth Circuit held the tax court properly declined to rule on whether the plaintiffs were tax-exempt ministers because it was able to dismiss the case on an alternative basis: the government's concession that the plaintiffs owed no FICA taxes due to their status as employees.  Invoking a previous holding that "[w]hen the Commissioner [of Internal Revenue] has admitted an issue in his answer, 'the Tax Court was bound to so find' unless the response was "so incredible as to justify the Tax Court in ignoring the Commissioner's flat admission of it[,]'" the court reasoned the tax court had "properly accepted the Commissioner's concession based on his reasoned assessment of alternate grounds." Id. at 329.  The Ninth Circuit did not indicate whether a *district court* reviewing a tax refund claim is similarly "bound to so find" when faced with the United States' concession on a tax owed for reasons distinct from those asserted in a refund claim.  The Court declines to reach this issue here as there is adequate authority apart from Handeland to find CA's claim is moot.

1 proposition that the abatement CA received is fundamentally different from the refund it sought,
2 because a refund is "a return of money it paid but never owed under the Internal Revenue Code"
3 while when a taxpayer seeks an abatement, it is "claiming that an amount, otherwise lawfully
4 assessed, should be reduced for some other, often statutory, reason." (Opp. at 7.)

Notwithstanding the differences between a refund and an abatement,[14] records of the IRS submitted by the United States indicate Plaintiffs received *both* an abatement *and* a refund on April 20, 2009, in accordance with 26 U.S.C. § 4962 (if it is established "a taxable event was not willful and flagrant, then any qualified first tier tax imposed . . .*shall not be assessed and, if assessed, the assessment shall be abated and, if collected, shall be credited or refunded as an overpayment*." (emphasis added)).  The IRS therefore did grant CA a refund; CA merely disagrees with the basis for the refund because it did not involve a concession that the E-Letters were not "political expenditures."  CA has cited no authority for the proposition that a tax refund issued on a basis distinct from those asserted in an administrative claim does not qualify as a "refund" for the purposes of rendering a tax refund claim moot.  Accordingly, in light of the holdings in Mitchell and Church of Scientology, the Court finds the IRS's abatement and refund of CA's excise taxes renders this refund suit moot, unless there are issues present that are capable of repetition yet evading review.

B. No Issues "Capable of Repetition Yet Evading Review"

CA also argues the refund claim is not moot because its situation falls into the exception contemplated by Church of Scientology, involving issues capable of repetition yet evading review.

1. The Government's Potential Revocation of the Refund

First, CA argues that because it has not accepted the government's tender, the government is free to "withdraw the offer."  Similarly, CA argues the government is able to bring suit to recover any request that has been erroneously granted under 26 U.S.C. § 7405 (providing the government with an action for "recovery of erroneous refunds").  In support, CA cites Hotel

---

[14] The issue before the Fifth Circuit in Beall was whether a claim for a refund of unabated interest under 26 U.S.C. § 6404(e)(1) [providing for abatement of interest attributable to unreasonable errors and delays by the IRS] was cognizable under § 7422 notwithstanding that a claim for abatement of interest differs from "the prototypical claim for refund of taxes and interest under section 7422." Beall, 336 F.3d at 423.  The Fifth Circuit ultimately held a claim for a refund of unabated interest is cognizable under section 7422 and is not barred by sovereign immunity. Id.

1  Conquistador, Inc. v. United States, 597 F.2d 1348 (Ct. Cl. 1979) (finding the government's tender
2  of the full amount of a disputed tax claim during the briefing on the parties' motion for summary
3  judgment was a "compromise settlement" which the plaintiff was free to reject, and moreover that
4  the disputed tax issue was capable of repetition because the government could sue under § 7405
5  for a refund erroneously paid) and First Federal Savings & Loan Ass'n. v. United States, 288 F.
6  Supp. 477 (W.D. Mo. 1968) (denying a motion to dismiss for lack of subject matter jurisdiction
7  where the government tendered the disputed tax amount on the eve of trial in an attempt to settle a
8  refund case, the plaintiff refused the tender, and there still existed issues capable of repetition
9  warranting a determination of the plaintiff's tax liability).

10      CA's arguments are unavailing. The authorities it cites are inapposite, because in those
11  cases the government tendered the disputed amount as an attempt to *settle* the federal tax refund
12  litigation.  Here, there is evidence that the government determined *before* Plaintiffs even filed this
13  lawsuit that it would abate the excise taxes and refund the amounts CA paid.  The record indicates
14  the IRS sent the notice of abatement and refund on March 27, 2009, and CA nevertheless filed this
15  action on April 3, 2009, before it received the abatement and refund the IRS executed on April 20,
16  2009.  (Exs. 4 and 5 to Hendon Decl.)  CA's fear that the IRS may somehow attempt to revoke the
17  refund does not qualify under the mootness exception for actions "capable of repetition yet
18  evading review."  Cf. Church of Scientology, 485 F.2d 315-17 (holding an otherwise-moot tax
19  refund case involved issues capable of repetition where, *inter alia*: (1) the issues regarding the
20  plaintiff's status as a tax exempt corporation would arise every year; (2) the IRS had issued a
21  manual supplement for identifying "Church of Scientology-type religious organizations,"
22  appearing to classify the plaintiffs as a suspect group and couched in "terms of directions for
23  future guidance" in examining returns; (3) there was evidence the IRS had already rejected the
24  plaintiff's "information returns" premised on its tax-exempt status from a tax year *subsequent* to
25  those at issue in the refund litigation ; (4) there was evidence the IRS had subpoenaed records
26  from tax years *subsequent* to those at issue in the refund litigation; and (5) the IRS levied one of
27  the plaintiff's bank accounts due to an unpaid tax for a *subsequent* year.)
28      Moreover, although the Court of Claims in Hotel Conquistador found the possibility of a
    § 7405 suit sufficient to try a case after the United States tendered a settlement offer, the court's

1  analysis was based on a much different set of facts.  Chief among those were that the plaintiffs
2  insisted they did not owe certain tax amounts, and the United States insisted the amounts were
3  owed up until the conclusion of the litigation.  As such, it was at least plausible that the United
4  States would bring a § 7405 suit despite its "'denia[l] it had any such strategy in mind" and the
5  court's admission that such an action would be unlikely.  Hotel Conquistador, 597 F.2d at 1355.
6  Here, the United States has never contended it did not owe CA an abatement and refund, and in
7  fact indicated that it would abate the excise taxes and issue a refund before CA even brought suit.
8  As such, the likelihood the United States would bring a § 7405 suit is speculative at best, and does
9  not rise to the level of an issue "capable of repetition yet evading review."

          2.        CA's Desire to Engage in Future "Substantially Similar" Speech

11        CA's most salient argument is that its desire to engage in speech substantially similar to
12  that of the E-Letters is chilled because of a risk the IRS may conduct another examination, assess
13  excise taxes, or worse, revoke its tax-exempt status.  CA argues that even though the government
14  has tendered a refund for the excise taxes, "the possibility of a continuing recurrence of the
15  problem [is] sufficient to entitle [them] to have the underlying legal issue examined."  (Opp. at 9,
16  citing Church of Scientology, 485 F.2d at 318.)  However, based on what has been submitted to
17  the Court, a recurrence of the issues giving rise to the refund suit is unlikely.

18        Although the FAC gives the impression that the two specified E-Letters alone caused the
19  IRS to assess the excise taxes against CA, the actual facts indicate there were other factors
20  contributing to this end result.  A letter from the IRS to CA dated January 5, 2005 (months before
21  the earliest E-Letter mentioned in the complaint) stated the IRS was conducting an investigation of
22  CA's potential acts of intervention in a political campaign.  Attached to the letter was an
23  "Information Document Request" asking several questions about CA's publication of a guide
24  entitled the Voter's Guide for Serious Catholics ("VGSC") and the placement of advertisements in
25  the USA Today newspaper featuring the VGSC. (Ex. 1 to Bieniek Decl.)  On March 17, 2005, the
26  IRS sent a second request for information, predominately focusing on the VGSC, but also
27  including questions about the circulation of Mr. Keating's E-Letters.  (Ex. 2 to Bieniek Decl.) The
28  IRS sent two more extensive requests for information regarding the VGSC and E-Letters, one on
    January 5, 2006, and one on June 1, 2006.  (Exs. 3 and 4 to Bieniek Decl.)

On May 11, 2006, CA's attorneys wrote to the IRS to inform them that a new organization, Catholic Answers Action ("CAA"), "ha[d] been incorporated as a 501(c)(4) organization." (Ex. 1 to Hendon Decl.) The letter also stated CAA was organized for the purpose of moving all lobbying activity from CA to CAA, and that CAA would engage in religious and educational lobbying and an "insubstantial amount of political activity," in addition to controlling the publication and distribution of the VGSC.[15] In a subsequent letter to the IRS, dated June 28, 2006, CA's attorneys also indicated that although CA would continue to feature E-Letters on its website, they would be non-political in nature, and an E-Letter feature including political issues would debut on the CAA website in July 2006. (Ex. 6 to Bieniek Decl.)

Ultimately, on May 2, 2008, the IRS sent a letter to CA stating that although CA continued to qualify for tax exemption, the IRS found: (1) the two [aforementioned] E-Letters mentioning Senator Kerry constituted political campaign intervention; (2) the VGSC standing *alone* did not constitute political campaign intervention; and (3) during the time period that both the designated E-Letters and the VGSC were posted to CA's website, the *combination* of the VGSC and the E-Letters constituted political campaign intervention.

Unlike Church of Scientology, where there were numerous compelling indications that the nature of the tax controversy over the plaintiff's tax-exempt status would be ongoing, here there is no indication that the combination of circumstances giving rise to the government's assessment of excise taxes against CA are likely to be repeated. First, IRS's decision to assess the taxes was based on a combination of the content of the specific E-Letters mentioning Senator Kerry, along with the online publishing of the VGSC in the context of an election year; the decision was extremely fact specific, whereas in Church of Scientology the underlying status of the plaintiff as an exempt corporation would recur each year, as indicated by the IRS's continued actions toward

---

[15] 26 U.S.C. § 501(c)(4) grants tax exemption to: "Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes." Section 501(c)(4) organizations, but not § 501(c)(3) organizations, are permitted to engage in substantial lobbying to advance their exempt purposes. Regan v. Taxation with Representation, 461 U.S. 540, 543 (1983). However, taxpayers who contribute to § 501(c)(4) may not deduct the amount of their contributions on their federal income tax returns. Id.

1 | that plaintiff. Second, it is impossible to predict with any certainty the type of speech and the
2 | context of the speech in which CA will engage in the future, whereas in <u>Church of Scientology</u>,
3 | the ongoing nature of the controversy was certain. Finally, the record indicates that by forming
4 | CAA, CA has a new forum from which it may issue the type of speech that gave rise to its liability
5 | for the excise taxes (i.e. the VGSC and politically charged E-Letters).

Accordingly, the Court dismisses the remainder of CA's claims for lack of subject matter jurisdiction because: (1) the refund has rendered CA's refund claim moot; and (2) there are no issues present that are capable of repetition, yet evading review.

## CONCLUSION

For the reasons stated herein, the Court GRANTS the United States' motion to dismiss the FAC, and DISMISSES the FAC in its entirety, with prejudice.

**IT IS SO ORDERED.**

**DATED: October 14, 2009**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**